## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** 100 F. Street, NE Washington, D.C. 20549-6030 )))))) | |
| **Plaintiff,** ) | Civil Action No. _____ |
| **v.** ) | |
| **FLOWSERVE CORPORATION** 5215 North O'Connor Blvd. Suite 2300 Irving, Texas 75039 ))))) | |
| **Defendant.** ) | |

### COMPLAINT

Plaintiff, U.S. Securities and Exchange Commission (the "Commission"), alleges:

### SUMMARY

1.     From approximately 2001 through 2003, Flowserve Corporation ("Flowserve") violated the books and records and internal controls provisions of the Foreign Corrupt Practices Act (the "FCPA") [15 U.S.C. §§ 78dd-1, et seq.] when two of its foreign subsidiaries entered into twenty contracts involving the payment of kickbacks totaling approximately $820,246 in connection with sales of industrial equipment to Iraqi government entities under the United Nations Oil for Food Program. Flowserve, through its subsidiaries, authorized or paid these kickbacks in the form of under-the-table "after sales service fees" ("ASSFs") through third-party agents. Approximately $646,488 of the kickback payments were made, and another $173,758 were authorized.

2.      Flowserve either knew or was reckless in not knowing of the kickbacks. The company also knew that the ASSF payments were prohibited by the Oil for Food Program, as well as under U.S. and international trade sanctions.

3.      The Oil for Food Program was intended to provide humanitarian relief to the Iraqi population, then subject to comprehensive international trade sanctions. The Program allowed the Iraqi government to purchase necessary humanitarian goods, but required that all purchases be made through a U.N.-controlled escrow account. The kickbacks paid in connection with Flowserve's foreign subsidiaries' Oil for Food contracts had the effect of diverting funds out of the escrow account and into an Iraqi slush fund.

4.      In accounting for certain of its Oil for Food Program transactions, Flowserve failed to accurately record the nature of the ASSF payments as kickbacks to the Iraqi regime. Flowserve also failed to devise and maintain a system of internal accounting controls sufficient to detect and prevent the illicit ASSF payments.

5.      As a result of the conduct above, Flowserve violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

**JURISDICTION**

6.      This Court has jurisdiction over this action under Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa]. Flowserve made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

7.    Venue is appropriate in this Court under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because Flowserve does business in this judicial district.

### DEFENDANT

8.    **Flowserve** is a New York corporation with its executive offices in Irving, Texas. Flowserve supplies pumps, valves, seals, and related automation and services to the power, oil, gas, and chemical industries. Flowserve trades on the New York Stock Exchange under the symbol "FLS," and its common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)]. Two Flowserve subsidiaries were involved in sales to Iraq under the Oil for Food Program.

### RELEVANT ENTITIES

9.    **Flowserve Pompes** is a wholly-owned French subsidiary of Flowserve's Pumps Division. Flowserve Pompes is based in Arnage, France. Throughout the relevant period, Flowserve Pompes' financial results were included in the consolidated financial statements that Flowserve filed with the Commission.

10.    **Flowserve B.V.** is a wholly-owned Dutch subsidiary of Flowserve's Seals Division. Flowserve B.V. is based in Roosendaal, Netherlands. Throughout the relevant period, Flowserve B.V.'s financial results were included in the consolidated financial statements that Flowserve filed with the Commission.

### FACTS

**I    The United Nations Oil for Food Program**

11.    Following Iraq's invasion of Kuwait in 1991, the United Nations Security Council and the United States imposed comprehensive economic sanctions on Iraq. Over the following years, the sanctions triggered a humanitarian crisis, with severe shortages

3

of food and medical supplies. In response, the U.N. Security Council authorized a relief program under which the Iraqi government would be permitted to sell crude oil and use the proceeds to purchase humanitarian supplies.

12.    Under the terms of the Oil for Food Program, the Iraqi government was authorized to sell crude oil to buyers of its choosing. A U.N. committee reviewed the commercial terms of each contract and approved each sale. The proceeds were wired by the purchaser directly into an escrow account maintained by the U.N. at BNP Paribas in New York. The Iraqi government was not given direct access to the proceeds of its oil sales, but was allowed to use the funds to purchase humanitarian goods, subject to U.N. review and approval. Individual Iraqi ministries could negotiate contracts for approved categories of products. The suppliers submitted their contracts to the U.N. committee for review. Upon approval of each contract, and after verification that the goods had been received in Iraq, the committee authorized payment to the supplier from funds in the escrow account.

13.    The Oil for Food Program was intended to maximize the Iraqi government's flexibility in meeting its humanitarian needs, while preventing it from undermining trade sanctions by diverting cash from the transactions. In practice, however, the Iraqi government was able to circumvent the Program's restrictions by demanding massive under-the-table payments from its contract partners. Starting around August 2000, each Iraqi ministry demanded a 10% "after sales service fee" ("ASSF") on all humanitarian goods purchased under the Program. The fee bore no relation to any actual services and was, in reality, an illicit 10% kickback to the Iraqi regime. The ASSF

4

payment was not identified in the official purchase contracts that the suppliers provided for U.N. review and was not made through the U.N.'s authorized payment channels.

14.    According to the U.N.'s Independent Inquiry Committee, which was created to investigate corruption in the Program, the Iraqi regime collected just over $1 billion in ASSF payments from suppliers. Payments were typically made in cash by the suppliers holding the Oil for Food contracts. The associated cost of the ASSF payments was passed along to the U.N.-controlled escrow account as the suppliers inflated their contract prices to cover the illicit payments. The ultimate economic effect of the kickbacks, therefore, was to deprive the U.N.'s humanitarian program of over $1 billion in humanitarian resources that otherwise would have been available to it.

15.    Each Iraqi ministry was responsible for collecting ASSF payments on the contracts it administered. In addition, the Ministry of Transportation ensured that no humanitarian supplies were permitted to cross Iraq's border without proof that all required ASSF payments had been paid. Because the payments violated U.N. requirements, the collection effort was handled surreptitiously. As demanded by Iraqi officials, the supplier made its ASSF payment -- either directly or through an Iraqi front company -- in cash at an Iraqi embassy or by depositing the funds into Iraqi-controlled banks, such as the Al-Rashid Bank in Lebanon or the Al-Rafidain Bank in Jordan.

16.    Following the U.S. invasion and occupation of Baghdad in 2003, the Coalition Provisional Authority assumed responsibility for ongoing Oil for Food contracts. The Provisional Authority put an end to the ASSF kickback requirement and renegotiated all open contracts to remove the associated 10% markups.

**II      Flowserve's Payment of ASSF's under the Program**

17.      Flowserve engaged in Oil for Food transactions through two of its European subsidiaries: Flowserve Pompes and Flowserve B.V. These Flowserve subsidiaries entered into a total of twenty contracts in which ASSF kickback payments were either made or authorized. In total, Flowserve subsidiaries, working through third-party agents, made ASSF payments of approximately $646,488 and authorized additional payments of $173,758.

**A.      Contracts Involving Flowserve Pompes**

18.      Flowserve Pompes participated in the Oil for Food Program from approximately 1997 through 2003. The company's exclusive agent for Iraqi contracts, including those under the Oil for Food Program, was a Jordanian entity. Once the Iraqi authorities began demanding kickback payments, Flowserve Pompes and its Jordanian agent worked in concert to channel ASSF kickback payments to Iraqi ministries, while concealing the payments from the U.N.

19.      In total, Flowserve Pompes made approximately $604,651 in ASSF payments in connection with fifteen contracts. Flowserve Pompes agreed to, but did not ultimately make, an additional $173,758 in improper ASSF payments under four additional contracts. Delivery under these four contracts had not been completed by the time of the U.S. invasion in March 2003. Following the invasion, the Coalition Provisional Authority, acting on behalf of the Iraqi ministries, required that Flowserve Pompes amend the contracts to remove the ASSF payments and lower the prices by ten percent.

20.    Senior officials at Flowserve Pompes, including the subsidiary's President, developed two different false cover stories to conceal the ASSF kickback payments. The company's internal accounting records falsely indicated that Flowserve Pompes was paying the Jordanian agent a ten percent fee on each contract to cover the cost of installing and commissioning the equipment. In reality, the agent provided no such services. The contract documents that Flowserve Pompes sent to the U.N. for approval painted a different, if equally false, picture. These documents omitted any reference to after sales services or related installation fees. Instead, to cover the cost of the illicit ASSF payments, the company inflated the unit price of each piece of equipment without disclosing the price increase, or the reason for it, to the U.N.

21.    The contract documentation for Flowserve Pompes' Oil for Food contracts was prepared both at the Arnage facility and at a Flowserve Pompes sales office in Beirut, Lebanon. Once an agreement was negotiated between the Beirut sales office and the relevant Iraqi ministry, and approved by officials in Arnage, the Beirut sales office would generate a pro forma invoice reflecting the actual pricing of the goods to be shipped under the U.N. contract. To memorialize Flowserve's agreement to pay the ASSF, the Beirut Area Manager signed a side letter to the Iraqi ministry stating that Flowserve Pompes would pay ten percent of the contract price to the ministry to cover "engineering services, installation, and commissioning." Officials at Flowserve Pompes were fully aware that no engineering, installation, or commissioning services would be performed under the contract, but the internal documentation at Flowserve Pompes maintained the pretense that it would be. The side letter was not disclosed to the U.N.

7

22.      In the documents that Flowserve Pompes prepared for U.N. approval, the
company did not pretend that the agent would provide engineering, installation, and
commissioning services. But the U.N. documents failed to disclose that a portion of the
contract price represented a kickback to the Iraqi ministry. The contract and pro forma
invoice that the U.N. received contained no reference to the company's side letter or to
any payment for after sales services. Instead, the unit prices of the listed equipment were
inflated by ten percent. There was nothing in the U.N. documentation to reveal that the
contract prices had been inflated, or that a portion of the contract price was to be kicked
back to the Iraqi authorities.

23.      After the U.N. approved the contract, the Beirut sales office prepared an
internal Order Entry Form and an Order Acknowledgement Form for the Iraqi ministry,
both of which included false line items for "after sales services" to be provided by
Flowserve Pompes' agent. The services were valued at ten percent of the contract.

24.      Prior to the shipment of the goods into Iraq, the agent sent a written
invoice to Flowserve Pompes in Arnage for the ASSF payment amounts to be made on
pending contracts, identifying them as "payments made on your behalf." Knowing that
the kickback payments had to be received by Iraqi authorities before the goods would be
allowed across the border, Flowserve Pompes' President made arrangements for the
agent's ASSF invoices to be paid immediately upon receipt. The payments to the agent
were typically made within twenty-four hours. The agent then made the ASSF kickback
payments by depositing cash into an Iraqi-controlled account in the Jordanian Housing
Bank for Trade and Finance.

25.    Officials at Flowserve Pompes either knew, or were reckless in not knowing, that illegal ASSF payments had been paid or offered under each of the nineteen contracts.

**B.    Contracts Involving Flowserve B.V.**

26.    Flowserve's Dutch subsidiary Flowserve B.V. entered into one contract involving an ASSF kickback payment of $41,836. The contract was for the supply of water pump spare parts to the Iraqi government-owned South Gas Company. Flowserve B.V.'s agent in the transaction was a Jordanian entity other than the one used by Flowserve Pompes.

27.    During August 2001, the principals of Flowserve B.V.'s Jordanian agent met with Flowserve B.V. officials in Roosendaal, Netherlands. At that meeting, Flowserve B.V. was advised that the agent would have to pay a ten percent kickback on the transaction on Flowserve B.V.'s behalf, for which the agent would need reimbursement.

28.    Following the meeting, the agent proposed that Flowserve B.V. conceal the ASSF kickback payment by having the agent serve as a distributor, rather than as an agent, and make the payment out of its margin. Flowserve B.V. rejected this proposal.

29.    Instead, Flowserve B.V.'s Controller chose to conceal the payment by increasing the cost of the purchase order by ten percent and passing the difference back to the agent. In September 2001, Flowserve B.V. agreed to pay a supplemental commission -- euphemistically labeled a "special project discount" -- to the agent to cover the amount of the kickback. The "special project discount" effectively doubled the agent's standard ten percent commission to twenty percent.

30.    The agent submitted an invoice for the combined commission and "special project discount" in February 2002. Flowserve made the payment to the agent in March 2002. The agent then made the ASSF payment to the Iraqi ministry on Flowserve B.V.'s behalf. The ASSF payment was not disclosed to the U.N.

**III    Flowserve's Failure to Maintain Adequate Internal Controls**

31.    Flowserve failed to maintain a system of internal controls sufficient (i) to ensure that the company's transactions under the Oil for Food Program were executed in accordance with management's authorization and (ii) to maintain accountability for the company's assets. As discussed above, Flowserve subsidiaries either made or agreed to make numerous illicit payments that contravened the Oil for Food Program, U.S. and international trade sanctions, and its own internal FCPA and anti-bribery policies.

32.    Flowserve failed to devise and maintain an effective system of internal controls to prevent or detect these violations of the FCPA, as required by Exchange Act Section 13(b)(2)(B).

**IV    Flowserve's Failure to Properly Maintain Its Books and Records**

33.    As described above, Flowserve's accounting for its Oil for Food transactions failed properly to record the nature of the ASSF payments. In nineteen Flowserve Pompes transactions, the company's internal accounting records indicated that Flowserve Pompes was paying its Jordanian agent a ten percent fee for performing installation and commissioning activities. In reality, that money represented a series of illegal kickbacks to the Iraqi regime. In one Flowserve B.V. transaction, the company's internal records indicated that Flowserve B.V. was paying a "special project discount" to its agent. In reality, that money also represented an illegal kickback to the Iraqi regime.

## CLAIMS FOR RELIEF

### FIRST CLAIM

**[Violations of Section 13(b)(2)(A) of the Exchange Act]**

34.    Paragraphs 1 through 33 are realleged and incorporated by reference.

35.    As described above, Flowserve, through its officers, agents and subsidiaries, failed to keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected its transactions and dispositions of its assets.

36.    By reason of the foregoing, Flowserve violated Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

### SECOND CLAIM

**[Violations of Section 13(b)(2)(B) of the Exchange Act]**

37.    Paragraphs 1 through 36 are realleged and incorporated by reference.

38.    As described above, Flowserve failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that payments were:  (i) made in accordance with management's general or specific authorization; and (ii) recorded as necessary to maintain accountability for its assets.

39.    By reason of the foregoing, Flowserve violated Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

A.    Permanently restraining and enjoining Flowserve from violating Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act  [15 U.S.C. §§ 78m(b)(2)(A) and (B)];

11

B.    Ordering Flowserve to disgorge ill-gotten gains, with prejudgment

interest, wrongfully obtained as a result of its illegal conduct;

C.    Ordering Flowserve to pay civil penalties pursuant to Section 21(d)(3) of

the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

D.    Granting such further relief as the Court may deem just and appropriate.

Dated:  February 21, 2008

Respectfully submitted,

Cheryl J. Scarboro (D.C. Bar No. 422175)
Tracy L. Price
Robert I. Dodge

Attorneys for Plaintiff,
U.S. Securities and Exchange Commission
100 F Street, NE
Mail Stop 6030 SPII
Washington, DC  20549-6030
(202) 551-4403 (Scarboro)

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| U.S. Securities and Exchange Commission | Flowserve Corporation |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT <u>Dallas County</u><br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Cheryl J. Scarboro<br>Tracy L. Price<br>Robert I. Dodge<br>100 F Street, NE<br>Washington, DC 20549-6030<br>(202) 551-4403 (Scarboro) | Barry J. Pollack<br>Kelley Drye & Warren LLP<br>3050 K Street, NW<br>Washington, DC 20007-5108<br>(202) 342-8472 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ● 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)          OR          ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☒ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| **G. Habeas Corpus/ 2255** | **H. Employment Discrimination** | **I. FOIA/PRIVACY ACT** | **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| **K. Labor/ERISA (non-employment)** | **L. Other Civil Rights (non-employment)** | **M. Contract** | **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

The complaint alleges defendant Flowserve violated the Foreign Corrupt Practices Act, 15 U.S.C. 15dd-1

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ _____  Check YES only if demanded in complaint
JURY DEMAND:  YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 2/21/2008  SIGNATURE OF ATTORNEY OF RECORD _(signature)_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No._____ |
| v. | |
| FLOWSERVE CORPORATION | |
| Defendant. | |

## CONSENT OF DEFENDANT FLOWSERVE CORPORATION

1.      Defendant Flowserve Corporation ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the Final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a)     permanently restrains and enjoins Defendant from violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 ("Exchange Act");

(b)     orders Defendant to pay disgorgement in the amount of $2,720,861, plus pre-judgment interest of $853,364; and

1

(c)    orders Defendant to pay a civil penalty in the amount of $3,000,000 under Section 21(d)(3) of the Exchange Act.

3.    Defendant agrees that it shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors or others. Defendant further agrees that it shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any civil penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors or others.

4.    Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.    Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.    Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7.    Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

2

8.      Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9.      Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this

3

action, Defendant understands that it shall not be permitted to contest the factual allegations of the complaint in this action.

11.     Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.     In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a

4

party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

14.    Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

5

15. Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.


Dated: January 16, 2008                    Flowserve Corporation

                                           By: _____
                                           Ronald F. Shuff
                                           Senior Vice President – General Counsel
                                           and Secretary
                                           5215 N. O'Connor Blvd., Suite 2300
                                           Irving, Texas 75039


On January 16, 2008, Ronald F. Shuff, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent with full authority to do so on behalf of Flowserve Corporation as its Senior Vice President – General Counsel and Secretary.


                                           _____
                                           Notary Public
                                           Commission expires:

Approved as to form:

_____
Christopher E. Kirkpatrick
Haynes and Boone, LLP
901 Main Street
Suite 3100
Dallas, Texas 75202
Attorneys for Defendant

ALLISON PARKEN
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
03-08-2011

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>                    v.<br><br>FLOWSERVE CORPORATION,<br><br>                              Defendant. | Civil Action No. |

## FINAL JUDGMENT AS TO DEFENDANT FLOWSERVE CORPORATION

Plaintiff the U.S. Securities and Exchange Commission having filed a Complaint, and

Defendant Flowserve Corporation ("Flowserve" or "Defendant") having entered a general

appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this

action; consented to entry of this Final Judgment without admitting or denying the allegations of

the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and

waived any right to appeal from this Final Judgment:

I

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and

Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this Final Judgment by personal service or

otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section

13(b)(2)(A) of the Securities Exchange Act of 1934 (the "Exchange Act"),

15 U.S.C. § 78m(b)(2)(A), by failing to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.

II

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B), by failing to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets; (iii) access to assets is permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

III

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $2,720,861, representing profits gained as a result of the conduct alleged in the Complaint, together with pre-judgment interest thereon in the amount of $853,364, and a civil penalty in the amount of $3,000,000 pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). Defendant shall satisfy this obligation by paying $6,574,225 within

ten (10) business days after entry of this Final Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a cover letter identifying Flowserve Corporation as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendant shall simultaneously transmit photocopies of the payment of disgorgement and payment of civil penalty and letter to the Commission's counsel in this action. By making these payments, Defendant relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Defendant. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961. The Commission shall remit the funds paid pursuant to this paragraph to the United States Treasury.

IV

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

3

V

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.


Dated: _____, _____


_____

UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No. |
| v. | |
| FLOWSERVE CORPORATION, | |
| Defendant. | |

## FINAL JUDGMENT AS TO DEFENDANT FLOWSERVE CORPORATION

Plaintiff the U.S. Securities and Exchange Commission having filed a Complaint, and

Defendant Flowserve Corporation ("Flowserve" or "Defendant") having entered a general

appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this

action; consented to entry of this Final Judgment without admitting or denying the allegations of

the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and

waived any right to appeal from this Final Judgment:

I

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and

Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this Final Judgment by personal service or

otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section

13(b)(2)(A) of the Securities Exchange Act of 1934 (the "Exchange Act"),

15 U.S.C. § 78m(b)(2)(A), by failing to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.

II

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B), by failing to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets; (iii) access to assets is permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

III

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $2,720,861, representing profits gained as a result of the conduct alleged in the Complaint, together with pre-judgment interest thereon in the amount of $853,364, and a civil penalty in the amount of $3,000,000 pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). Defendant shall satisfy this obligation by paying $6,574,225 within

ten (10) business days after entry of this Final Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a cover letter identifying Flowserve Corporation as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendant shall simultaneously transmit photocopies of the payment of disgorgement and payment of civil penalty and letter to the Commission's counsel in this action. By making these payments, Defendant relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Defendant. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961. The Commission shall remit the funds paid pursuant to this paragraph to the United States Treasury.

IV

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

3

V

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.


Dated: _____, _____


_____

UNITED STATES DISTRICT JUDGE

4